IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAGENIA G. SHORT,

        Plaintiff,

vs.                                   Case No. 14-4075-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th
Cir. 1993).  At step five, the burden shifts to the
Commissioner to show that the claimant can perform other work
that exists in the national economy.  Nielson, 992 F.2d at 1120;
Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The
Commissioner meets this burden if the decision is supported by
substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 1, 2013, administrative law judge (ALJ) Robert J.
Burbank issued his decision (R. at 15-26).  Plaintiff alleges
that she had been disabled since June 11, 2009 (R. at 15).
Plaintiff meets the insured status requirements for social
security disability benefits through June 30, 2012 (R. at 17).

4

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since June 11, 2009, the alleged onset date (R. at 17).  At step two, the ALJ found that plaintiff had severe impairments of status post right femur surgery, degenerative disc disease of the lumbar spine and obesity (R. at 17).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18).  After determining plaintiff's RFC (R. at 19), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 24).  At step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 25-26).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III.  Are the ALJ's credibility findings supported by substantial evidence?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony.  Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d

6

903, 905, 908, 909 (10th Cir. 2002).  Although the court will

not reweigh the evidence, the conclusions reached by the ALJ

must be reasonable and consistent with the evidence.  See Glenn

v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must

affirm if, considering the evidence as a whole, there is

sufficient evidence which a reasonable mind might accept as

adequate to support a conclusion).  The court can only review

the sufficiency of the evidence.  Although the evidence may

support a contrary finding, the court cannot displace the

agency's choice between two fairly conflicting views, even

though the court may have justifiably made a different choice

had the matter been before it de novo.  Oldham v. Astrue, 509

F.3d 1254, 1257-1258 (10th Cir. 2007).

In his decision, the ALJ, when discussing treatment notes

in 2012, indicated that "there was no mention of the claimant

utilizing a cane or other assistance device in physician's

treatment notes" (R. at 21).  Later, after noting plaintiff's

assertion that she must utilize a cane when she leaves the

house, the ALJ stated "there is very little mention of the need

for assistance devices in treatment records" (R. at 23).

However, the treatment records indicate the following:

(1) March 9, 2010: Pt [plaintiff] ambulates with spc [single
point cane (R. at 520)] (R. at 448).

(2) March 30, 2010: Plaintiff walks with cane (R. at 441).

(3) August 26, 2010: Plaintiff does not have difficulty with walking, but does use a single point cane (R. at 520).

(4) September 24, 2010: Plaintiff is supposed to walk with a cane but does not always use it and will hold on periodically to her husband or another object (R. at 412).

(5) July 15, 2011: Plaintiff can walk only about 300 feet with a cane, and she does use a cane (R. at 518).

(6) June 11, 2012: A cane is listed under medications to use as directed when ambulating (R. at 584).

(7) October 31, 2012: A cane is listed under medications to use as directed when ambulating (R. at 578).

(8) December 11, 2012: A cane is listed under medications to use as directed when ambulating (R. at 566).

Thus, contrary to the ALJ's assertion, when referencing treatment notes in 2012 (Exhibit 25F), that there was no mention of plaintiff utilizing a cane, the last three entries set forth above from 2012 are from Exhibit 25F, and list a cane as a current medication to use as directed when ambulating. Contrary to the ALJ's assertion that there is very little mention of the need for assistance devices in the treatment records, the treatment records in fact indicate that plaintiff uses a cane, is supposed to walk with a cane, can only walk about 300 feet with a cane, and that a cane is listed as a medication to use as directed when ambulating. Despite according minimal weight to the opinions of Dr. Veloor, the medical records are in fact consistent with the opinion of Dr. Veloor that plaintiff needs

an assistive device for ambulation (R. at 525).  These findings
by the ALJ are not supported by substantial evidence.

When evaluating plaintiff's credibility, the ALJ also
stated that "no source has suggested that the claimant is chair
or bed-ridden and needs extra assistance" (R. at 23).  However,
it is well-settled law that a claimant need not prove she is
bedridden or completely helpless to be found disabled.  Reed v.
Barnhart, 399 F.3d 917, 923 (8th Cir. 2005).  One does not need
to be utterly or totally incapacitated in order to be disabled.
Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones
v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).  Plaintiff
does not allege that she is chair or bed-ridden.

Furthermore, the mere fact that plaintiff's physicians
recommend physical activity and that plaintiff can handle some
activity (R. at 23-24) does not indicate that plaintiff is able
to work.  According to the regulations, activities such as
taking care of yourself, household tasks, hobbies, therapy,
school attendance, club activities or social programs are
generally not considered to constitute substantial gainful
activity.  20 C.F.R. § 404.1572(c) (2014 at 399).

The ALJ further noted that plaintiff testified that she
cares for her children, cares for her personal needs with the
assistance of her husband, folds the laundry, and does dishes
sitting down.  She also indicated she goes to the store with her

9

family, rides a bike, and attends church on occasion.  The ALJ
concluded that plaintiff's allegations are not entirely credible
(R. at 23).

Although the nature of daily activities is one of many
factors to be considered by the ALJ when determining the
credibility of testimony regarding pain or limitations, Thompson
v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must
keep in mind that the sporadic performance of household tasks or
work does not establish that a person is capable of engaging in
substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324,
1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131
(8th Cir. 2005), the ALJ noted that the claimant engaged in
household chores, including laundry, grocery shopping, mowing,
cooking, mopping and sweeping.  The ALJ concluded that
claimant's allegations of disabling pain were inconsistent with
her reports of her normal daily activities and were therefore
not deemed credible.  The court found that substantial evidence
did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work.**  As we said in McCoy v. Schweiker, 683
> F.2d 1138, 1147 (8th Cir.1982) (en banc),
> the test is whether the claimant has "the
> ability to perform the requisite physical

acts day in and day out, in the sometimes
competitive and stressful conditions in
which real people work in the real world."
In other words, evidence of performing
general housework does not preclude a
finding of disability.  In Rainey v. Dep't
of Health & Human Servs., 48 F.3d 292, 203
(8th Cir.1995), the claimant washed dishes,
did light cooking, read, watched TV, visited
with his mother, and drove to shop for
groceries.  We noted that these were
activities that were not substantial
evidence of the ability to do full-time,
competitive work. In Baumgarten v. Chater,
75 F.3d 366, 369 (8th Cir.1996), the ALJ
pointed to the claimant's daily activities,
which included making her bed, preparing
food, performing light housekeeping, grocery
shopping, and visiting friends.  We found
this to be an unpersuasive reason to deny
benefits: "**We have repeatedly held...that
'the ability to do activities such as light
housework and visiting with friends provides
little or no support for the finding that a
claimant can perform full-time competitive
work.'**" Id. (quoting Hogg v. Shalala, 45
F.3d 276, 278 (8th Cir.1995)). Moreover, we
have reminded the Commissioner

> **that to find a claimant has the
> residual functional capacity to
> perform a certain type of work,
> the claimant must have the ability
> to perform the requisite acts day
> in and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or
> visit with friends on the phone
> does not qualify as the ability to
> do substantial gainful activity.**

Thomas v. Sullivan, 876 F.2d 666, 669 (8th
Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court stated:

> [The ALJ] attached great weight to the applicant's ability to do laundry, take public transportation, and shop for groceries. We have remarked the naïveté of the Social Security Administration's administrative law judges in equating household chores to employment. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (... [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases [citations omitted]."

705 F.3d at 278.  Therefore, the fact that she cares for her children and her personal needs, shops, rides a bike and attends church does not demonstrate that plaintiff can perform full-time competitive work, and is not inconsistent with plaintiff's allegation of disability.  This is especially true in light of her testimony that she needs the assistance of her husband when caring for her personal needs (bathing and putting on shoes (R. at 20)), and that she does dishes sitting down.

The ALJ noted that objective evidence does not support the degree of limitation alleged by plaintiff, noting a number of

test results, including a Doppler study which was found to be
normal (R. at 22).  A right lower extremity venous Doppler study
on March 24, 2010 was negative (R. at 500, 515).  However, the
ALJ failed to mention a second such test performed on June 16,
2011.  This test indicated that "there is venous insufficiency
with reflux in the right lower extremity.  This could
potentially cause a variety of symptoms including swelling,
discomfort, and varicose veins (R. at 495).  The medical report
states that the indication is edema[1] and pain in the right foot
and ankle, which is improved with supine[2] position (R. at 496).
This report is consistent with the opinion of Dr. Veloor that
plaintiff would need to lie down 2-3 times a day (R. at 524).

Although an ALJ is not required to discuss every piece of
evidence, the ALJ must discuss significantly probative evidence
which he rejects.  Mays v. Colvin, 739 F.3d 569, 576 (10th Cir.
2014).  Given the fact that the ALJ relied on a negative Doppler
study in 2010, the ALJ should have considered the positive 2011
Doppler study indicating a variety of symptoms (including
swelling and pain), and indicating that the symptoms improved if
plaintiff was lying down.

The court has found a number of errors by the ALJ when
evaluating plaintiff's credibility and looking at the medical

---

[1] Edema is defined as the swelling of soft tissues as a result of excess fluid accumulation.  Webster's New World Medical Dictionary (3rd ed. 2008 at 134).
[2] Supine is defined as lying face up.  Webster's New World Medical Dictionary (3rd ed. 2008 at 407).

evidence.  Furthermore, the medical evidence regarding

plaintiff's use of a cane when ambulating and the 2011 Doppler

study support the opinions expressed by Dr. Veloor on July 15,

2011 that plaintiff needs an assistive device for ambulating and

needs to lie down 2-3 times a day to alleviate edema and pain in

the right foot and ankle.  In light of these errors, the court

finds that the ALJ's credibility determination was flawed

because many of the ALJ's credibility findings were not closely

and affirmatively linked to substantial evidence.  Furthermore,

on remand, the ALJ will need to reevaluate the medical opinion

evidence in light of the errors noted above which provide some

support to the opinions expressed by Dr. Veloor on July 15, 2011

(R. at 523-526).  Finally, the ALJ shall make new RFC findings

after the ALJ has reevaluated plaintiff's credibility and the

medical opinion evidence.

## IV.  Did the ALJ err at step two in finding that regional pain syndrome was a non-medically determined impairment?

On May 27, 2010, Dr. Dick stated that he suspected that

plaintiff has a fragment of RSD (complex regional pain

syndrome).  Dr. Dick then stated that plaintiff's pain, which

does not meet the criteria for complex regional pain syndrome,

would be chronic limb pain (R. at 624).  The ALJ relied on this

report to find that regional pain syndrome is a non-medically

determined impairment.

The ALJ stated that "there was no diagnosis of regional pain syndrome in the record" (R. at 18).  However, in her evaluation of June 22, 2010, Dr. Veloor stated that it was her impression that plaintiff had "right foot pain, possible due to complex regional pain syndrome" (R. at 516).  Dr. Veloor went on to say that it is possible that plaintiff has developed complex regional pain syndrome as a result of this traumatic injury (R. at 516).  Again, on July 15, 2011, Dr. Veloor stated that plaintiff had right foot numbness, tingling and swelling, possibly due to complex regional pain syndrome (R. at 518).  On remand, the ALJ should consider these findings by Dr. Dick and Dr. Veloor.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of August 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge